**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| ASSE INTERNATIONAL, INC., *Plaintiff-Appellant*, <br><br> v. <br><br> JOHN F. KERRY, Secretary of State of the United States; ROBIN LERNER, Deputy Assistant Secretary of State for Private Sector Exchange, Bureau of Educational and Cultural Affairs; UNITED STATES DEPARTMENT OF STATE, *Defendants-Appellees*. | No. 14-56402 <br><br> D.C. No. 8:14-cv-00534-CJC-JPR <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted
February 2, 2015—Pasadena, California

Filed October 9, 2015

Before: Dorothy W. Nelson, Jay S. Bybee,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[*]

### Administrative Procedure Act / Due Process

The panel reversed the district court's dismissal of ASSE International's claims, alleging violations of the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment, and challenging the Department of State's sanctions imposed against ASSE for violating various regulations associated with the Exchange Visitor Program that allows nationals to participate in temporary cultural and educational exchange programs in the United States.

The panel held that the State Department's imposition of sanctions was subject to Administrative Procedure Act review. The panel concluded that the State Department failed to rebut the strong presumption of judicial reviewability because its regulations provided a "meaningful standard" by which the court could review its exercise of discretion in sanctioning ASSE.

Concerning ASSE's procedural due process claim, the panel held that the Due Process Clause did not mandate trial-type proceedings in this case. The panel further held that the State Department did not provide ASSE adequate procedural protections because ASSE did not have a meaningful opportunity to rebut significant portions of the evidence that the State Department used against it. The panel remanded to the district court to decide in the first instance whether ASSE

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

had a protected property interest, and if so, whether the due process violation it suffered was harmless error.

## COUNSEL

Ira J. Kurzban (argued), Edward F. Ramos, Kurzban Kurzban Weinger Tetzeli & Pratt P.A., Miami, Florida, for Plaintiff-Appellant.

Alisa B. Klein (argued) and Mark B. Stern, Appellate Staff Attorneys, Joyce R. Branda, Acting Assistant Attorney General, André Birotte, Jr., United States Attorney, Beth S. Brinkmann, Deputy Assistant Attorney General, United States Department of Justice, Washington, D.C., for Defendants-Appellees.

## OPINION

BYBEE, Circuit Judge:

Congress created the Exchange Visitor Program (EVP) to allow foreign nationals to participate in temporary cultural and educational exchange programs in the United States. The Department of State administers the EVP, with the assistance of various third-party program sponsors. This case arises out of sanctions that the Department imposed against one of these sponsors, ASSE International (ASSE), for violating various regulations. ASSE challenged the Department's sanctions decision in the United States District Court for the Central District of California, claiming that the agency had acted arbitrarily and capriciously in violation of the Administrative Procedure Act (APA), and that it had violated ASSE's due

process rights under the Fifth Amendment. The district court dismissed the suit as unreviewable under the APA because the administration of the EVP is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). It also dismissed ASSE's constitutional claims on the grounds that the process was "fundamentally fair." We reverse as to both grounds.

I

In the Mutual Educational and Cultural Exchange Act of 1961, Congress authorized the State Department, through the United States Information Agency "to provide, by grant, contract, or otherwise, for educational exchanges . . . by financing visits and interchanges between the United States and other countries of students, trainees, teachers, instructors, and professors." 22 U.S.C. § 2452(a)(1). The State Department, by regulation, created the EVP to promote educational and cultural exchanges between the people of the United States and of other nations. 22 C.F.R. § 62.1(b). The EVP authorizes various exchange programs for foreign visitors; as relevant here, the EVP authorizes "work-based" training programs to expose foreign college graduates "to American techniques, methodologies, and technologies" in their fields. *Id.* § 62.2. The State Department oversees the EVP but uses third-party program sponsors to select qualifying visitors, find them educational or training opportunities, and monitor their welfare during their programs. *See* 22 U.S.C. § 2452; 22 C.F.R. §§ 62.1(b), 62.6. The State Department caps the number of participants in any given sponsor's programs by allocating each sponsor a one-year supply of DS-2019 forms, which are the "Certificate[s] of Eligibility for Exchange Visitor (J-1) Status." 22 C.F.R. § 62.12(d). Sponsors, in turn, distribute one DS-2019 form per EVP applicant, and the applicant uses that form to apply

for participation in the EVP program. *See About DS-2019*, J-1 VISA: Exchange Visitor Program, *available at* http://j1visa.state.gov/participants/how-to-apply/about-ds-2019/. "The Department of State has the sole discretion to determine the number of Forms DS–2019 to be issued to a sponsor." 22 C.F.R. § 62.12(d)(1). ASSE is one such privately-owned EVP program sponsor and is subject to these regulations.

The Department's regulations provide a framework for implementing the EVP. For instance, a program sponsor must ensure that the "exchange visitor possesses sufficient proficiency in the English language . . . to participate in his or her program." *Id.* §§ 62.10(a)(2), 62.22(d)(1). Program sponsors must ensure that training programs provide "bona fide training" and are not "used as substitutes for ordinary employment or work purposes." *Id.* § 62.22(b)(1)(ii); *see also id.* § 62.22(f)(2)(iii), (v). Similarly, sponsors must not put "trainees or interns in unskilled or casual labor positions" or "in positions, occupations, or businesses that could bring the [EVP] or the Department into notoriety or disrepute." *Id.* § 62.22(j). Sponsors may assign responsibilities to third parties, but any violations committed by such third parties are "imputed to the sponsors" themselves. *Id.* § 62.22(g)(1). Thus, the sponsors must "[e]nsure that any host organizations and third parties . . . are sufficiently educated on the goals, objectives, and regulations of the [EVP] and adhere to all regulations." *Id.* § 62.22(f)(1)(v).

The State Department's regulations provide that it may sanction sponsors if its Office of Exchange Coordination and Designation makes at least one of four findings: (1) the sponsor has "[v]iolated one or more" agency regulations; (2) the sponsor has "[e]videnced a pattern of failure to

comply" with the regulations; (3) the sponsor has "[c]ommitted an act of omission or commission, which has or could have the effect of endangering the health, safety, or welfare of an exchange visitor"; or (4) the sponsor has "conducted its program in such a way as to undermine the foreign policy objectives of the United States." *Id.* § 62.50(a).

In its discretion, the Department can determine whether to impose more serious sanctions (suspension, revocation, or a denial of redesignation to a sponsor) or "lesser sanctions," which can include any combination of a written reprimand, a mandate that the sponsor submit a corrective action plan to remedy the violation(s), and up to a 15% reduction in the number of authorized visitors who may participate in the sponsor's programs. *Id.* § 62.50(b)(1). The regulations outline the procedure required before "lesser sanctions" may be imposed: the Department must give the program sponsor written notice of its intent to impose lesser sanctions, after which the sponsor has ten days to respond with "a statement in opposition to or mitigation of the sanction," which "may include additional documentary material." *Id.* § 62.50(b)(2). Then the Department "may, in its discretion, modify, withdraw, or confirm" the sanctions outlined in its initial notice. *Id.*

ASSE has been an EVP program sponsor for nearly four decades, serving thousands of exchange visitors each year. In 2009, ASSE contracted with a third party, American Career Opportunities (ACO), to assist ASSE with exchange visitors from Japan. ASSE also approved The Cream Pot restaurant in Hawaii as a host organization. In accordance with EVP regulations, ASSE alleges that it "fully vetted" both organizations before contracting with them, and ASSE

outlined all of the Department's requirements in the contracts.[1]  *Id.* § 62.22(g).  Further, ASSE alleges that it provided extensive training to ACO personnel to be sure that they were "sufficiently educated on the goals, objectives, and regulations of the" EVP.  *Id.* § 62.22(f)(1)(v).

ACO assisted ASSE with the recruitment and placement of a 31-year-old Japanese exchange visitor, Noriko Amari, who began an ASSE-sponsored training program at The Cream Pot.  In February 2012, a few weeks after beginning her program, Amari contacted the State Department to lodge a complaint about her training conditions, alleging labor exploitation, excessive work hours, inadequate compensation for work performed, and harassment.  The State Department sought an explanation from ASSE regarding Amari's troubling claims.  ASSE alleges that it immediately tried to communicate with Amari and offer assistance, but Amari would not respond to ASSE's attempt to talk to her.

Within weeks, the Department initiated a review of ASSE's compliance with the EVP regulations.  Based on this review, the Department determined that sanctions were warranted because ASSE had violated several regulations.  *Id.* § 62.50(a)(1).  While the Department conceded that ASSE had not directly participated in any harassment and that ASSE had responded to Amari's complaints appropriately, the Department determined that ASSE had failed to ensure that

---

[1] ASSE appeals the district court's dismissal of its complaint on jurisdictional and failure to state a claim grounds.  The government made a facial challenge to the district court's exercise of jurisdiction, asserting that ASSE's complaint's allegations were, on their face, insufficient to invoke jurisdiction, rather than a factual challenge.  As such, we treat the factual allegations in ASSE's complaint as true.  *See Courthouse News Serv. v. Planet*, 750 F.3d 776, 779–80 (9th Cir. 2014).

Amari had sufficient English to participate in the program, leaving her vulnerable for abuse—a violation of 22 C.F.R. §§ 62.10(a)(2)[2] and 62.22(d)(1).[3] The Department also found that ASSE had failed to ensure that Amari's placement was a genuine training program, not just the fulfillment of a general labor need—a violation of 22 C.F.R. §§ 62.22(b)(1)(ii)[4] and 62.22(f)(1)(i).[5] Finally, the

[2] "Sponsors are responsible for the effective administration of their exchange visitor program(s). These responsibilities include:

> (a) Selection of exchange visitors. Sponsors must establish and utilize a method to screen and select prospective exchange visitors to ensure that they are eligible for program participation, and that:

> . . . . (2) The exchange visitor possesses sufficient proficiency in the English language . . . to participate in his or her program . . ."

[3] "In addition to satisfying the general requirements set forth in § 62.10(a), sponsors must ensure that trainees and interns have verifiable English language skills sufficient to function on a day-to-day basis in their training environment."

[4] "Exchange Visitor Program training and internship programs must not be used as substitutes for ordinary employment or work purposes . . . . The requirements in these regulations for trainees are designed to distinguish between bona fide training, which is permitted, and merely gaining additional work experience, which is not permitted. The requirements in these regulations for interns are designed to distinguish between a period of work-based learning in the intern's academic field, which is permitted (and which requires a substantial academic framework in the participant's field), and unskilled labor, which is not."

[5] "Obligations of training and internship program sponsors.

> (1) Sponsors designated by the Department to

Department held ASSE responsible for the conduct of its third-party organization, ACO, and ACO's violations of the regulations—concluding that ASSE violated 22 C.F.R. §§ 62.9(f)(2)[6] and 62.22(f)(1)(v).[7] ACO's conduct and ASSE's failure to adequately screen Amari for adequate English, the Department concluded, endangered Amari's health, safety, and welfare, as prohibited by the regulations—providing an additional reason for sanctions under 22 C.F.R. § 62.50(a)(3). In reaching these preliminary conclusions, the Department relied in part on the fact that the Department of Homeland Security had issued Amari a

administer training and internship programs must:

(i) Ensure that trainees and interns are appropriately selected, placed, oriented, supervised, and evaluated."

[6] "Staffing and support services. Sponsors must ensure that:

. . . . (2) Their employees, officers, agents, [and] third parties . . . associated with the administration of their exchange visitor program are adequately qualified, appropriately trained, and comply with the Exchange Visitor Program regulations."

[7] "Obligations of training and internship program sponsors.

(1) Sponsors designated by the Department to administer training and internship programs must:

. . . . (v) Ensure that any host organizations and third parties involved in the recruitment, selection, screening, placement, orientation, evaluation for, or the provision of training and internship programs are sufficiently educated on the goals, objectives, and regulations of the Exchange Visitor Program and adhere to all regulations set forth in this Part . . . ."

T Visa—a visa for those who are or have been victims of human trafficking—based on her treatment in the training program.

In November 2013, the State Department provided ASSE with a written Notice of Intent to impose sanctions, describing its findings and the three "lesser sanctions" it intended to impose: a written reprimand, a requirement that ASSE provide a corrective action plan, and a 15% reduction in the number of trainees in ASSE's program. Pursuant to its regulations, the Department gave ASSE a ten-day window in which to respond, and ASSE submitted a written response with exhibits. The exhibits included Amari's self assessment of her own English skills and college transcripts showing her successful completion of several English courses at a university in Japan. After considering ASSE's response, the Department determined that lesser sanctions were still warranted, and it issued a final Imposition of Lesser Sanctions.

ASSE filed a complaint in the Central District of California, claiming that the Department's decision to impose sanctions was arbitrary and capricious and should be set aside under the APA, 5 U.S.C. § 551 et seq.[8] ASSE also alleged that the Department's sanctions procedure violated its due process rights. The State Department filed a motion to dismiss ASSE's complaint, arguing that the sanctions imposed against ASSE were unreviewable because sanctions decisions are "committed to agency discretion by law" within the meaning of 5 U.S.C. § 701(a)(2), and asserting that ASSE had received all the process it was due.

---

[8] Although ASSE raised additional claims before the district court, it is not pursuing any of those claims on appeal.

The district court granted the motion to dismiss. With respect to ASSE's APA claims, the district court found that the statutes authorizing the EVP—22 U.S.C. §§ 2451, 2452(a), and 2455(f)—vested full discretion in the Department to implement the program in a manner that would "strengthen international cooperative relations,"[9] and that the EVP regulations at issue here did not limit the Department's broad discretionary authority to implement sanctions. The district court also dismissed ASSE's due process claim, finding that ASSE had failed to state a claim because "the process by which ASSE was sanctioned was fundamentally fair." ASSE filed a timely notice of appeal.[10]

## II

ASSE first challenges the district court's dismissal of the complaint on the ground that there is no review available under the APA. *See* 5 U.S.C. § 701(a)(2).

At the outset, we note the "strong presumption that Congress intends judicial review of administrative action." *Helgeson v. Bureau of Indian Affairs*, 153 F.3d 1000, 1003 (9th Cir. 1998) (quoting *Traynor v. Turnage*, 485 U.S. 535, 542 (1988)) (internal quotation marks omitted); *see also ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004) ("The default rule is that agency actions are reviewable . . . even if

---

[9] The district court also made a passing reference to "the fact that the issues involved here squarely implicate foreign relations" as a reason why it lacked jurisdiction to review ASSE's claims.

[10] "We review de novo the district court's dismissal for lack of subject matter jurisdiction." *Tritz v. U.S. Postal Serv.*, 721 F.3d 1133, 1136 (9th Cir. 2013). We also review due process questions de novo. *United States v. Harrington*, 749 F.3d 825, 828 (9th Cir. 2014).

no statute specifically authorizes judicial review."). "This presumption is overcome only in two narrow circumstances," *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 718–19 (9th Cir. 2011): (1) "when Congress expressly bars review by statute," *id*. at 719; or (2) where an agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The first exception is inapplicable here, but the Department argues that the second exception applies and that we are precluded by the APA itself from reviewing the Department's decision.

Agency action is committed to agency discretion in those "rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply, thereby leaving the court with no meaningful standard against which to judge the agency's exercise of discretion." *Pinnacle*, 648 F.3d at 719 (internal quotation marks and citations omitted). In determining whether an agency decision fits within this exception, "we consider 'the language of the statute and whether the general purposes of the statute would be endangered by judicial review.'" *Id.* (quoting *Cnty. of Esmeralda v. Dep't of Energy*, 925 F.2d 1216, 1218 (9th Cir. 1991)). "'[T]he mere fact that a statute contains discretionary language does not make agency action unreviewable.'" *Id.* (quoting *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir. 1994)).

The Department argues that, as the district court reasoned, we are barred from reviewing ASSE's APA claims for two reasons: (1) the statute authorizing the Department to implement the EVP does not limit the Department's discretion in any way, and because the EVP "squarely implicate[s] foreign relations," judicial review would undermine the purpose of the program; and (2) ASSE's

claims are "well beyond the scope of any meaningful review the Court could provide" because the Department's regulations do not provide a "meaningful standard" by which a court could review the Department's actions. We conclude that the Department failed to rebut the strong presumption of judicial reviewability because its regulations provide a "meaningful standard" by which we can review its exercise of discretion in sanctioning ASSE.

A. *Discretion in the EVP's Authorizing Statute*

In order to assess whether the court has a "meaningful standard against which to judge the agency's exercise of discretion[] . . . we first look at the statute itself." *Helgeson*, 153 F.3d at 1003 (citations and internal quotation marks omitted). The authorizing statute vests the State Department with discretion to create and fund exchange programs to the extent that the Department "considers that [they] would strengthen international cooperative relations." 22 U.S.C. § 2452(a). The decision whether to establish a particular exchange program lies purely within the Department's discretion and is a policy question as to which there is no law for us to review. *See id.* §§ 2451, 2452(a). If all we were asked to review was the decision to create the EVP, there would be "no law to apply," *Webster v. Doe*, 486 U.S. 592, 599 (1988) (internal quotations omitted), because we would have "no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

But ASSE has not asked us to review the decision to create the EVP. Rather, it has asked us to measure the State Department's administration of the EVP against the Department's own regulations. This we can do without

infringing any of the State Department's prerogatives under the statute. "Even where statutory language grants an agency 'unfettered discretion,' its decision may nonetheless be reviewed if regulations or agency practice provide a 'meaningful standard by which this court may review its exercise of discretion.'" *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003) (quoting *Socop–Gonzalez v. INS*, 208 F.3d 838, 844 (9th Cir. 2000)). Accordingly, we "will find jurisdiction to review allegations that an agency has abused its discretion by exceeding its legal authority or by failing to comply with its own regulations." *Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (internal quotation marks omitted).

The district court offered a second reason why we cannot review the State Department's actions: because "the issues involved here squarely implicate foreign relations." Quoting the Third Circuit, the State Department argues that all "cases involving the [EVP] necessarily implicate foreign policy concerns and involve an agency exercising its discretionary powers in that respect." *Chong v. Dir., U.S. Info. Agency*, 821 F.2d 171, 177 (3d Cir. 1987). The Department thus claims that we are treading in "an area of executive action in which the courts have long been hesitant to intrude," and that judicial review will undermine the foreign policy goals of the statute. *Helgeson*, 153 F.3d at 1003 (internal quotation marks omitted).

But a weak connection to foreign policy is not enough to commit an agency action to the agency's discretion. *See Baker v. Carr*, 369 U.S. 186, 211 (1962) ("[I]t is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance."); *see also, e.g.*, *Singh v. Clinton*, 618 F.3d 1085, 1092 (9th Cir. 2010)

(reversing State Department's decision to terminate immigrant's visa registration).

The Department's reliance on *Chong* is misguided and the quotation taken out of context. Dr. Chong came to the United States to participate in an EVP for graduate medical training. *Chong*, 821 F.2d at 173. At the end of his program, Dr. Chong was expected to return to Hong Kong, but Dr. Chong feared that he would not be permitted to practice medicine there and requested a § 212(e) hardship waiver, 8 U.S.C. § 1182(e), so that he and his family could remain in the United States. *Id.* at 174. The State Department denied his request and Chong filed suit. The government, as it has in this case, claimed that the federal courts could not review the waiver denial under the APA because there was "no law to apply." *Id*. at 175. The Third Circuit rejected the government's position, finding that the State Department had "adopted regulations which delineate the procedure it must use to review waiver requests." 821 F.2d at 176. The court recognized that its "scope of review of the [State Department's] recommendation function under section 1182(e) is severely limited because the statute and the [Department's] regulations vest rather broad discretion in the Director of the USIA," and reviewed the Department's decision for an abuse of discretion. *Id.* at 176–77.

In the course of its opinion, the Third Circuit commented that "cases involving the Exchange Visitor Program necessarily implicate foreign policy concerns and involve an agency exercising its discretionary powers . . . ." *Id.* at 177. But that statement was an explanation for why the court would not demand "a more particularized explanation" from the State Department, not a justification for why it could not review the State Department's decision. *Id.* Moreover, the

Department's regulations here are far more detailed than the statute and regulations at issue in *Chong*, which addressed decisions to grant or deny hardship waivers. *Chong* does not help the government's case.

In addition, although the Department claims that "serious foreign policy consequences . . . could result from judicial review," it never explains how judicial review of a sanctions decision against a U.S.-based program sponsor could undermine foreign relations or national security in any way. *Cf. Webster*, 486 U.S. at 601 (CIA hiring decisions are unreviewable in part because the "Nation's security depend[s] . . . on the reliability . . . of the Agency's employees"). As ASSE points out, it is difficult to imagine how Japan would be offended by federal court review of the State Department's decision to impose sanctions on ASSE.

In sum, the statute authorizing the EVP only gives the State Department the absolute discretion to create or not to create exchange programs for foreign students, and that decision is not challenged here. Additionally, we cannot see that in this instance, judicial review would undermine the EVP's foreign policy goals and purposes. We thus turn to whether the Department's own regulations erect a standard by which we may judge its actions.

B. *The State Department's Regulations Provide a "Meaningful Standard" for Review*

We think it evident that the State Department's regulations creating the EVP provide more than an ample basis in law for us to review its decision under the APA. *See* 22 C.F.R. pt. 62. Those regulations create the program, § 62.1(b); define all the relevant terms, § 62.2; provide who

is eligible to be a sponsor, §§ 62.3, 62.7–62.8; provide which foreign nationals may participate, § 62.4; describe the application process for sponsors, § 62.5; establish the general obligations of sponsors, §§ 62.9–62.15; describe the rules for foreign exchange participants, §§ 62.16–62.17, 62.22, 62.43, 62.45; and provide for sanctions against or termination of sponsors, §§ 62.50, 62.60–62.63.  After reviewing these regulations, it is obvious to us that they establish a comprehensive scheme for administering an exchange program.  For program sponsors, the regulations have the force of law, and there are real consequences for failing to abide by them.  Indeed, if the regulations had been enacted as statutes by Congress, we clearly would have law to apply and could review the State Department's actions under the APA.

The fact that the regulations also give the Department discretion in the administration of the EVP does not prevent our review.  Section 701(a)(2) of the APA precludes review of agency action "committed to agency discretion by law," but this has never been thought to put all exercises of discretion beyond judicial review.  Indeed, "the APA itself commits final agency action[s] to our review for 'abuse of discretion.'"  *Pinnacle*, 648 F.3d at 720 (quoting 5 U.S.C. § 706(2)(A)).  The abuse of discretion standard is one with which federal courts are quite familiar, and it is just that—a legal standard by which we judge the legitimacy of a lower court's or an agency's action.  It is a *standard of review*, not a *bar to review*.  That said, it is a generous standard that gives a lower court or an agency leeway in the decisions it makes.  We will reverse under an abuse of discretion standard when the trier of fact and law "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *see also Bobbitt v. Milberg LLP*, __ F.3d __,

2015 WL 5255081, at *2 (9th Cir. Sept. 10, 2015) (noting that a lower court abuses its discretion when it "makes an error of law, or when it reaches a result that is illogical, implausible, or without support in inferences that may be drawn from the record"). Here, where the State Department has reserved to itself in the EVP certain decisions as within its "discretion," *see, e.g.*, 22 C.F.R. §§ 62.41(a), 62.50(b)(1), or even its "sole discretion," *see, e.g.*, *id.* §§ 62.6(a), 62.62, we will take into account the State Department's reservation and expertise and accord it the proper deference. But that does not deprive us of the right to review its actions for an abuse of its discretion or to determine if its actions were otherwise arbitrary and capricious.

Under the State Department's regulations, sanctions may be imposed against a program sponsor if the agency determines that any one of four specified grounds exists. *Id.* § 62.50(a). The agency invoked two of these grounds here. First, the Department found that ASSE "[v]iolated one or more provisions" of the agency's internal regulations.[11] *Id.* § 62.50(a)(1). Second, it found that ASSE committed "an act of omission or commission" that endangered "the health, safety, or welfare" of Amari. *Id.* § 62.50(a)(3). ASSE contests the validity of these findings by arguing that the agency did not base those findings on sufficient evidence. This type of challenge—which entails looking at the agency's decision-making process to ensure that the agency relied on

---

[11] Specifically, the Department charged ASSE with violating regulations that (1) require exchange visitors to speak sufficient English to participate in their programs, (2) prohibit placing exchange visitors for the purpose of fulfilling a labor need instead of providing a genuine training program, and (3) require program sponsors to educate and oversee the third parties that they contract with. We have quoted the regulations, *supra* notes 2–7.

sufficient evidence—is equally within our purview. *See, e.g.*, *Arrozal v. INS*, 159 F.3d 429, 433 (9th Cir. 1998) (granting a petition for review where the INS provided a "cursory and generalized analysis of [the petitioner's] favorable factors"); *Maldonado v. Dep't of Agric.*, 154 F.3d 1086, 1088–89 (9th Cir. 1998) (granting petition for review upon finding that the Department of Agriculture's decision was based on "insufficient evidence"); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (reversing the HHS's determination that claimant was not disabled based on the ALJ's reliance on insufficient evidence). That is so despite the fact that the State Department's regulations call upon the agency's expertise, judgment, and discretion. *See Pinnacle*, 648 F.3d at 720 ("Although the [agency regulations] provide that the [agency] determines the 'sufficiency' of a manufacturer's evidence and statements, the [agency regulations] do not give the [agency] unbridled discretion."); *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000) ("The fact that an agency has broad discretion in choosing whether to act does not establish that the agency may justify its choice on specious grounds. To concede otherwise would be to disregard entirely the value of political accountability, which itself is the very premise of administrative discretion in all its forms."); *Beno*, 30 F.3d at 1066 (holding that a HHS decision was reviewable even though the statute permitted the Secretary to authorize waivers only "to the extent and for the period the Secretary finds necessary" and according to the Secretary's "judgment" (alteration and emphasis omitted)).

The district court found that ASSE alleged "that the State Department reached the wrong conclusion in making [its] findings, and gave weight to the wrong evidence," and that whether Amari spoke adequate English to participate in the EVP or whether ASSE's contractor, ACO, was properly

trained were "questions well beyond the scope of any meaningful review the Court could provide." We respectfully disagree. We do not review agency factfinding de novo except when specially authorized. 5 U.S.C. § 706(2)(F); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414–15 (1971). But that does not mean that we cannot review agency factfinding at all. We are to review the Department's decision to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Even though we are "not empowered to substitute [our] judgment for that of the agency," our "inquiry into the facts is to be searching and careful" and we are to determine "whether there has been a clear error of judgment." *Overton Park*, 401 U.S. at 416.

The APA prescribes the "substantial evidence" test for review of formal agency proceedings. 5 U.S.C. § 706(2)(E). We have recognized, however, that "as a practical matter, the arbitrary and capricious standard incorporates the substantial evidence test," and we use that test for review of agency factfinding in informal proceedings as well. *Ursack Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949, 958 n.4 (9th Cir. 2011); *see also Wileman Bros. & Elliott, Inc. v. Espy*, 58 F.3d 1367, 1374–75 (9th Cir. 1995), *rev'd on other grounds sub nom. Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457 (1997). We have said that "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bonnichsen v. United States*, 367 F.3d 864, 880 n.19 (9th Cir. 2004) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

In sum, we may review the State Department's final agency action under the standards prescribed by 5 U.S.C. § 706(2)(A). To the extent the petition challenges the agency's factfinding, we may review the State Department's determinations for substantial evidence.

## III

We turn next to ASSE's due process claim.[12] A procedural due process claim "hinges on proof of two elements: (1) a protect[ed] liberty or property interest . . . and (2) a denial of adequate procedural protections." *Pinnacle*, 648 F.3d at 716 (quoting *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998)). ASSE argues that it has a protected interest in the DS-2019 forms, which are required for each participant. Because the Department has a limited number of forms, the Department regulates the number of participants each sponsor can process. Consequently, a reduction in DS-2019 forms to a sponsor effectively reduces the sponsor's business. The district court assumed, without deciding, that ASSE had a protected

---

[12] Having found that we may review the State Department's action under the APA, we are authorized to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity; . . . [or] without observance of procedure required by law." 5 U.S.C. § 706(2)(B), (D).

We note, however, that even if we had found the State Department's action unreviewable under 5 U.S.C. § 701(a)(2), we would still be able to review its decision insofar as ASSE had raised colorable constitutional claims, unless Congress precluded such review. "[W]here Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988). Nothing in the Mutual Educational and Cultural Exchange Act of 1961 evidences such intent.

property interest in its allotment of DS-2019 forms, and dismissed ASSE's due process claim on the basis that ASSE failed to state a claim that it was denied adequate procedural protections.   For purposes of this appeal, the State Department has not contested that ASSE has a property interest protected by the Due Process Clause.  We too will assume that ASSE has a protected property interest in its allotment of DS-2019 forms.

The State Department's regulations mandate that it give adequate notice of its intent to impose sanctions and that it invite and consider any response and accompanying evidence. *See* 22 C.F.R. § 62.50(b)(2).   ASSE concedes that the Department followed that procedure in large part, but argues that the procedure itself is inadequate because it does not allow for an opportunity to confront evidence in a trial-type setting.   In addition, ASSE argues that even if the Department's paper-hearing procedure is constitutionally sufficient, in this instance the procedures were inadequate because the Department's Notice of Intent did not provide a sufficient summary of the evidence against ASSE, and the Department relied on new evidence when it imposed sanctions, depriving ASSE of a meaningful opportunity to rebut.

Following the order of the district court's analysis, we will first decide whether the process ASSE received was fundamentally fair.  We agree with the Department that the Due Process Clause does not mandate trial-type proceedings here, but we hold that the Department did not provide adequate procedural protections in this instance.

A. *ASSE Is Not Entitled to Trial-Type Procedures to Confront Adverse Witnesses*

ASSE argues that it should be able to confront Amari and any other adverse witnesses in a trial-like setting—including confrontation and cross-examination of witnesses. But we conclude that the Due Process Clause does not mandate a trial-type procedure here.

Due process "is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation marks omitted). Rather, it is "flexible and calls for such procedural protections as the particular situation demands." *Id.* (internal quotation marks omitted). In *Mathews v. Eldridge*, the Supreme Court established a balancing test for determining how much process is due. It requires that we consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. A careful consideration of the factors reveals that while the Department must give ASSE an accounting of the evidence on which it relied, it need not conduct oral hearings

or afford sponsors the opportunity to confront or cross-examine witnesses.

First, we consider the effects of the Department's sanctions decision on ASSE. *See id.* The imposition of "lesser sanctions" deprives ASSE of 15% of its DS-2019 forms for one-year and results in a public listing that ASSE has been sanctioned on the State Department's website. This reduction, although temporary, does impact ASSE's ability to participate as a sponsor in the EVP and results in some financial loss. Moreover, the sanctions and the agency's underlying findings stay on ASSE's file with the State Department permanently, and that record forms the basis for the agency's decision to re-designate ASSE as a sponsor in future years. *See* 22 C.F.R. § 62.7(c). In addition, ASSE's business operates on referrals throughout a global EVP network, and public sanctions listed online may damage those relationships. Thus, ASSE's private rights at stake are significant, albeit they are less so since the sanctions are temporary and ASSE's status as a sponsor is not at issue in these proceedings.

Second, we consider the risk of erroneous deprivation if the Department grants ASSE only a paper hearing, as opposed to other trial-type proceedings. That is, we ask what is the risk that the State Department, employing its less formal procedures based on a paper record, will make a mistake. We conclude that such a risk is low, so long as the Department affords ASSE a complete paper hearing and reveals all material evidence it intends to rely on. Our decision that due process does not require full judicial or trial-type proceedings is far from novel. *See Pinnacle*, 648 F.3d at 717; *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082–83 (9th Cir. 2010); *United States v.*

*Clifford Matley Family Tr.*, 354 F.3d 1154, 1162 (9th Cir. 2004); *see also Brock v. Roadway Express, Inc.*, 481 U.S. 252, 266 (1987) ("We conclude, however, that as a general rule the employer's interest is adequately protected without the right of confrontation and cross-examination, again so long as the employer is otherwise provided an opportunity to respond at a meaningful time and in a meaningful manner." (internal quotation marks omitted)); *Goldberg v. Kelly*, 397 U.S. 254, 266 (1970) (holding that the constitutionally required process "need not take the form of a judicial or quasi-judicial trial").

ASSE argues that oral cross-examination is especially important in situations like this one where the evidence against ASSE comes almost exclusively from one person's accusations. But a party's opportunity to rebut agency evidence need not come in the form of oral cross-examination of witnesses. *Buckingham*, 603 F.3d at 1082–83 (citing cases); *see Brock*, 481 U.S. at 266. The opportunity to refute unfavorable evidence *in some fashion*, however, is an "immutable" principle of procedural due process: "[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Greene v. McElroy*, 360 U.S. 474, 496 (1959).

We do not insist that the State Department conduct plenary hearings, even where a sponsor's interest (like ASSE's) in avoiding lesser sanctions is significant. The EVP

is a program of limited duration[13] for which the State Department relies on third-party sponsors and their contributors to administer the program according to the regulations. Although witness credibility might occasionally be at issue, violations of the State Department regulations will, in the main, be established—and investigated—through paper records, including written witness statements. The State Department may, of course, determine at any time to conduct more formal hearings, but sponsors facing lesser sanctions are not entitled to such a hearing. As we observed in *Pinnacle*, "as judges, we tend to favor the kind of hearings that are familiar to us," but "[ASSE] has not made the case that the Due Process Clause demands more formal proceedings in this case. . . . [T]here is no evidence that live testimony would improve the quality of the [State Department's] decision." *Pinnacle*, 648 F.3d at 717.

The third *Mathews* factor further supports our decision that trial-type proceedings are not required here. Although the Department will incur some financial and administrative cost to conduct a paper hearing and send ASSE a complete record of its adverse evidence, it would face a much greater burden if required to engage in trial-type proceedings in cases which, like this one, involve foreign exchange participants. We recognize that the Department has an interest in the expeditious resolution of these claims. The Department has a strong interest in the comfort and welfare of exchange visitors according to the EVP's mandate that it operate to "strengthen international cooperative relations." *See* 22 U.S.C. § 2452(a). The State Department's regulations for

---

[13] "[T]he maximum duration of a training program is 18 months, and the maximum duration of an internship program is 12 months." 22 C.F.R. § 62.22(k).

administering the EVP "are intended for the protection of the visitor," and we acknowledge that it may be very traumatic for foreign exchange participants to be subjected to American-style trial procedures, undermining the very goals of the program. *See Beul v. ASSE Int'l, Inc.*, 233 F.3d 441, 445 (7th Cir. 2000).

Subject to constitutional constraints, an agency has broad discretion in choosing the form of the proceeding that it will conduct. *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543–44 (1978). Agencies are "free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *FCC v. Schreiber*, 381 U.S. 279, 290 (1965) (internal quotation omitted). Because we find that trial-type proceedings are not constitutionally required here, we leave the question whether to grant ASSE such additional procedures to the Department's discretion.

B. *The State Department Failed to Provide ASSE a Meaningful Opportunity to Rebut Key Evidence*

Next, we address ASSE's claim that the paper-hearing provided inadequate process because it was deprived of a "meaningful" opportunity to rebut evidence that the State Department relied on in its imposition of sanctions. Although we find the question close, for reasons explained below, we agree.

"The fundamental requisite of due process of law is the opportunity to be heard[] . . . at a meaningful time and in a meaningful manner." *Goldberg*, 397 U.S. at 267 (citations and internal quotation marks omitted). And "fundamental fairness"—the "touchstone" to determining whether a

plaintiff received due process, *Harrington*, 749 F.3d at 828 (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320–21 (1985))—"requires that a party against whom an agency has proceeded be allowed to rebut evidence offered by the agency if that evidence is relevant," *Carnation Co. v. Sec'y of Labor*, 641 F.2d 801, 803 (9th Cir. 1981). *See Sw. Sunsites, Inc. v. FTC*, 785 F.2d 1431, 1436–37 (9th Cir. 1986) (noting that a relevant consideration in a due process analysis is whether the parties "had an opportunity to rebut" evidence against them and finding no due process violation, in part, because the petitioners did have an "opportunity to respond to the documents" brought against them); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Greene*, 360 U.S. at 496; *Buckingham*, 603 F.3d at 1082 ("The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard at a *meaningful* time and in a *meaningful* manner." (emphasis added) (internal quotation and citation omitted)).

ASSE contends that the State Department withheld material details from it—details underlying the Department's and Amari's accusations against ASSE and which the Department later relied on in imposing sanctions.[14] ASSE alleges that by failing to disclose this evidence, the Department deprived ASSE of a meaningful opportunity to rebut its accusations.

---

[14] ASSE makes one due process claim that does not fit this mold; it argues that it supplied the Department with exculpatory evidence— evidence from a co-trainee who reported positive experiences with her training—that the Department ignored. We note ASSE's claim, but we rely on the more significant claim that ASSE was denied a meaningful opportunity to rebut the charges against it.

1. *Summary of Amari's Interview with the State Department*

First, ASSE argues that the Department relied almost exclusively on Amari's own ex parte testimony and that such testimony was never disclosed to ASSE. ASSE argues that the Department failed to produce any evidence underlying the third-party harassment of Amari alleged and cited by the State Department in the Notice of Intent. ASSE contends that due process required the Department to give ASSE an opportunity to confront Amari's testimonial evidence in some form, and that the summary the State Department provided was inadequate.[15]

The Notice of Intent explains:

> Specifically, after a two hour interview on February 16 with Ms. Amari (speaking only through an interpreter), the Office determined that Ms. Amari was being harassed by third parties – The Cream Pot (host organization), American Career Opportunity (domestic and foreign third party), and Global Associates (foreign third party). Ms. Amari told of having endured almost 30 separate instances of harassment, threats regarding her

---

[15] In its Imposition of Lesser Sanctions, the Department noted that "ASSE does not address this harassment in its Statement." The Department might have argued that ASSE had waived this argument about the third-party harassment claims by "not address[ing] this." But the Department did not make this argument in its brief and has thus forfeited its waiver argument. *See United States v. Jacobo Castillo*, 496 F.3d 947, 952 n.1 (9th Cir. 2007) (en banc); *United States v. Garcia-Lopez*, 309 F.3d 1121, 1123 (9th Cir. 2002).

immigration status, and threats to her family
if she did not remain silent about the working
conditions imposed by the three third parties.

A summary of evidence may, in certain circumstance, provide sufficient notice to allow a meaningful opportunity to respond.  *See Loudermill*, 470 U.S. at 546 (in some circumstances, due process will be satisfied by an "explanation of the . . . evidence" and opportunity to respond).  Moreover, unlike other cases where we have found a summary of testimony inadequate, the State Department's summary of the interview did provide many crucial details about the identity of the interviewee, involved parties, and the content of the allegations. *See, e.g.*, *Kaur v. Holder*, 561 F.3d 957, 960–62 (9th Cir. 2009) (summary stating only that "reliable, confidential sources have reported that [the alien] has conspired to engage in alien smuggling; has attempted to obtain fraudulent documents; and has engaged in immigration fraud by conspiring to supply false documents for others" was insufficient); *see also Greene*, 360 U.S. at 496, 508 (failure to provide information regarding the identity or source of confidential informant/evidence did not "comport with . . . traditional ideas of fair procedure").

Yet, in this case the government does not assert that the actual interview notes, or transcript, if it exists, from the interview, are confidential.  Thus, the government's interest in relying on a summary, rather than providing interview notes or a transcript, is minimal.  On the other hand, had the Department given ASSE more details about Amari's accusations, ASSE claims it may have been able to produce evidence refuting them.  Such evidence may have affected the Department's decision as to the severity of sanctions, or whether to even impose sanctions at all.  Furthermore, the

Department's evidence of harassment came solely from Amari—with no record of any supporting evidence.[16] Thus, the risk of an erroneous decision was heightened, and the State Department should have provided ASSE with complete interview notes so it would have an opportunity to rebut the details of the harassment.

## 2. *ASSE Representative Fei Jiang's Email*

Second, ASSE points to the Department's reliance on an email that the Department noted in its Imposition of Sanctions but did not reference in its Notice of Intent.[17] In

---

[16] ASSE also argues that the State Department relied on the fact that DHS had issued Amari a T Visa. ASSE argues that it did not have access to evidence presented to DHS and that the DHS proceeding was a "black box" it could not penetrate. But importantly, the State Department did not rely on any evidence submitted to DHS and withheld from ASSE. Rather the State Department relied only on the fact that DHS issued the T Visa and that the Department should not "ignore the fact that [DHS] considers Ms. Amari to have shown sufficient evidence of human trafficking while participating in ASSE's exchange visitor program." We find no error in relying on this fact. The State Department disclosed DHS's issuance of the T Visa in its Notice of Intent to impose sanctions, so ASSE had ample opportunity to explain or rebut that fact.

[17] ASSE also argued that it was deprived of a meaningful opportunity for rebuttal in an additional instance when the Department expanded its account of its interactions with Amari in its Imposition of Lesser Sanctions beyond what it relayed in the Notice of Intent to impose sanctions. In the Notice, the only detail about an interview with Amari on February 16, 2012 was that the Department representatives spoke to Amari "only through an interpreter." But after acknowledging ASSE's argument that the use of an interpreter "is not, standing alone, 'evidence that [Amari] cannot speak English,'" the Imposition of Lesser Sanctions elaborated its account, stating that other government officials present at the meeting had confirmed "that their attempts to converse informally with Ms. Amari in English without the assistance of the interpreter were to no

the February 2012 email to the Department, ASSE representative Fei Jiang stated that Amari's "English appeared to be not at an acceptable level for the purpose of this program," and that ACO had been "negligent."

The State Department cites to this email in a footnote in its Imposition of Sanctions, concluding that Ms. Jiang "virtually admitted . . . that Ms. Amari should not have been selected." The question of Amari's English skills was a key dispute between ASSE and the State Department. And although ASSE's claimed ignorance of this email, which was sent by one of its own employees involved in handling the State Department's inquiry into Amari's status, may trigger some skepticism, it is true that the State Department did not rely on or mention that email in the Notice of Intent. Including its reliance on the email would not be burdensome, and ASSE alleges that had it been given notice that the Department would rely on this statement, ASSE could have explained and rebutted Ms. Jiang's statement. It argues that Amari's apparent lack of English ability was more likely the result of "instructions by the anti-trafficking organization representing her not to speak with ASSE staff." As the State Department failed to mention this piece of evidence in its initial Notice of Intent, ASSE was deprived of a meaningful opportunity to rebut the evidence.

\* \* \*

The State Department does not challenge ASSE's claims that it did not get an opportunity to address key evidence. Instead, it argues that the Due Process Clause does not

avail due to Ms. Amari's insufficient English,"—a small but significant detail that ASSE did not have the opportunity to explain or defend against.

require it to conduct trial-type proceedings, a claim we resolved in the previous section. The Department claims that the paper-hearing process it provided is a "hearing appropriate to the nature of the case," and thus constitutionally sufficient. *Loudermill*, 470 U.S. at 542 (internal quotation marks omitted).

The government's argument misses the mark. True, we have observed that "although due process guarantees 'some kind of hearing . . . at some time before a person is finally deprived of his property interests,' a full evidentiary hearing is not required in every case." *Clifford Matley Family Tr.*, 354 F.3d at 1162 (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 16 (1978); other citations omitted). Thus, written submissions may be sufficient—and are in this case—to satisfy the Due Process Clause. *See Pinnacle*, 648 F.3d at 717; *Clifford Matley Family Tr.*, 354 F.3d at 1162. Here, however, the Notice of Intent did not fully advise ASSE of the evidence against it, and ASSE was not given an additional opportunity to respond to the new evidence once the State Department mentioned this evidence in the imposition of sanctions. Thus, ASSE was deprived of *any* "meaningful" opportunity to rebut some of the State Department's adverse evidence.

The Department withheld important evidence that it based its sanctions on, the primary example being the sparse evidence underlying Amari's harassment claims. In its Notice of Intent to impose sanctions, the Department provided a very brief summary of Amari's claims without producing any evidentiary support, such as the interview notes or transcript. At the very least, the State Department should have attached the specific allegations on which it relied, instead of briefly summarizing Amari's claim of

almost "30 separate instances of harassment." This evidentiary showing is not enough to satisfy the due process requirement that a party receive a meaningful opportunity to rebut the evidence an agency brings against it. Moreover, the State Department relied on additional evidence, unmentioned in the Notice of Intent, when imposing sanctions. ASSE did not have an opportunity to rebut these pieces of evidence as they were not mentioned in the Notice of Intent, and ASSE was not afforded an opportunity to submit a response to the Imposition of Sanctions.

In sum, because ASSE did not have a meaningful opportunity to rebut significant portions of the evidence that the Department used against it, the Department did not afford it adequate procedural protections. The district court erred in finding that ASSE failed to state a claim because the process afforded was fundamentally fair.

Furthermore, the issue of whether ASSE has a protected property interest was not fully briefed, and as it also has not been passed upon in the first instance by the district court, we decline to reach the issue. *See Dodd v. Hood River Cnty.*, 59 F.3d 852, 863 (9th Cir. 1995). Instead, we remand to the district court to decide in the first instance whether ASSE has a protected property interest, and if so, whether the due process violation it suffered was harmless error. *See Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 989 (9th Cir. 2012) ("[The claimant] must establish that, had it been provided the process it was due, it could have, and plausibly would have, taken steps to undermine [the State Department's imposition of sanctions] such that [the State Department] would not have [imposed sanctions] or that substantial evidence would not have supported the [imposition of sanctions].").

IV

We hold the district court erred in dismissing ASSE's complaint. The State Department's imposition of sanctions is subject to APA review and ASSE has stated a claim that it received constitutionally inadequate procedural protections. Accordingly, we reverse the district court's dismissal of ASSE's claims and remand to the district court for further proceedings consistent with this opinion. Costs on appeal are awarded to ASSE.

**REVERSED and REMANDED.**